UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                            :

NICHOLAS J. SMITH and SMITH &
BRYANT, INC.,

                   Plaintiffs,

    - against -

PALI CAPITAL, INC., BRAD BERK,
THOMAS H. DITTMER, as Trustee Under
the Thomas H. Dittmer Declaration of Trust,
JOHN JAKOBSON and PETER JAKOBSON,
as Joint Tenants in Common, POTOMAC
DEVELOPMENT CORPORATION 401(k)
PROFIT SHARING PLAN AND TRUST u/a
dated 12/3/86 f/b/o: DAVID SCHWARTZ,
POTOMAC DEVELOPMENT
CORPORATION 401(k) PROFIT SHARING
PLAN AND TRUST u/a dated 12/3/86 f/b/o:
RICHARD BELL, BRADLEY REIFLER,
HANNA RIVKIN, HOWARD SLOAN, and
HERBERT SOROCA,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**OPINION AND ORDER**

**06 Civ. 3362 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/7/06

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Nicholas J. Smith and Smith & Bryant, Inc. ("Smith") bring this

diversity action[1] against Pali Capital, Inc. ("Pali"), and Brad Berk, Thomas H.

Dittmer, John Jakobson, Peter Jakobson, Potomac Development Corporation

401(k) Profit Sharing Plan and Trust u/a dated 12/3/86 f/b/o: David Schwartz,

Potomac Development Corporation 401(k) Profit Sharing Plan and Trust u/a dated

12/3/86 f/b/o: Richard Bell, Bradley Reifler, Hanna Rivkin, Howard Sloan, and

Herbert Soroca (collectively, "the Arapahoe lenders"). Smith alleges breach of

contract against Pali, and alleges conversion, fraudulent conveyance, and judicial

foreclosure against all defendants.[2] The claims arise out of a loan Smith provided

for the purchase of automated teller machines ("ATMs"). Pali now moves to

---

[1]     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §
1332 in that there is complete diversity of citizenship between the parties and the
matter in controversy exceeds the sum of $75,000. Nicholas J. Smith is a resident
of Arizona and Smith & Bryant, Inc. is an Arizona corporation. Defendant Pali
Capital, Inc. has its principal place of business in New York. Defendant Thomas
H. Dittmer is a resident of Illinois. Defendants Brad Berk, John Jakobson, Peter
Jakobson, Bradley Reifler, Howard Sloan, and Hannah Rivkin are residents of
New York. Defendants Potomac Development Corporation 401(k) Profit Sharing
Plan and Trust u/a dated 12/3/86: David Schwartz and Potomac Development
Corporation 401(k) Profit Sharing Plan and Trust u/a dated 12/3/86: Richard Bell
are legal entities with their principal places of business in Washington, D.C. And
defendant Herbert Soroca is a resident of Connecticut. *See* Complaint ("Compl.")
¶¶ 7-18.

[2]     The claims Smith brings against the Arapahoe lenders are based on an
agency relationship between Pali and lenders to the Arapahoe ATM Fund. Smith
"bring[s] this action against Pali and the group of investors for whom it is agent
and who are receiving profits from the ATMs purchased with Plaintiffs' funds[.]"
*Id.* ¶ 6.

dismiss the breach of contract claim and all defendants move to dismiss the remaining claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that they fail to state a claim for which relief can be granted. For the following reasons, defendants' motion to dismiss is denied in part and granted in part.

## II.    BACKGROUND[3]

### A.    The Pali-Renegade Relationship

Pali, a Delaware corporation with its principal place of business in New York, is "an NASD and SEC regulated broker-dealer."[4]  In March 2003, James Verbic, President of Renegade Technology Group ("Renegade"), met with Herbert Soroca, Pali's head of Corporate Finance,[5] to discuss Renegade's need for financing to acquire ATMs.[6]  Renegade's plan was to "place those machines in locations where Renegade would have a contract in place with the owner of the

---

[3]    The following allegations are drawn from the Complaint and presumed to be true for purposes of this motion. The Complaint is poorly drafted and hard to decipher. While it is not the Court's obligation to rewrite the Complaint, I will construe it liberally in deciding the motion to dismiss.

[4]    Compl. ¶ 9.

[5]    *See id.* ¶ 18.

[6]    *See id.* ¶ 24.

location to provide ATM services."[7]

In April 2003, Verbic again met with Pali to discuss the financing structure.[8] Verbic proposed that single purpose limited liability companies ("LLCs"), wholly owned by Renegade, would be created for each transaction.[9] Renegade would create segregated bank accounts for each LLC.[10] Surcharge revenue[11] would be deposited into each bank account and "used exclusively for the required payments to the Lenders to the LLC."[12] Interchange revenue would be deposited into the bank accounts on a monthly basis.[13]

Verbic represented that revenues would first be used to pay costs associated with ATM transactions.[14] Once those costs were paid, loans from the

---

[7]     *Id.*

[8]     *See id.* ¶ 25.

[9]     *See id.* ¶ 27.

[10]     *See id.*

[11]     Surcharge revenue is "the amount the ATM informs the customer they will be charged for the transaction, typically $2.00." *Id.* ¶ 26.

[12]     *Id.* ¶ 29.

[13]     *See id.* ¶ 27.  Interchange revenue is "a fee typically paid by the customer's financial institution, unbeknownst to the customer, typically $0.55." *Id.* ¶ 26.

[14]     *See id.* ¶ 28.

LLC lenders would be repaid.[15]  Any excess revenue in the bank accounts would be distributed to Renegade.[16]  "Additionally, security interests . . . would be obtained on all ATMs financed" by each lender.[17]

After these discussions, Pali contracted to serve as Renegade's investment advisor and placement agent for the ATM acquisition project.[18]  "Pali sold the Notes issued by the various LLCs to various individuals and entities through term sheets, private placement memoranda and subscription agreements[.]"[19]  Pali represented that it would serve as each lender's agent and administer the terms and conditions of the loans.[20]  Smith alleges this created a fiduciary relationship between Pali and the lenders.[21]

In or about May 2004, a consultant to Pali discovered that Renegade had been commingling funds with the LLCs, and failed to create segregated bank

---

[15]    *See id.*

[16]    *See id.*

[17]    *Id.*

[18]    *See id.* ¶ 29.

[19]    *Id.*

[20]    *See id.* ¶¶ 30-31.

[21]    *See id.*

accounts and comply with the terms and conditions of the loans.[22]  Despite the fact

that the consultant reported these findings to Pali, Smith claims that Pali neither

took action nor informed the lenders of Renegade's violations.[23]  Between May

2004 and January 2005, Smith alleges that Pali continued to fail in its duty to hold

Renegade to the terms of the loan agreements and to protect the interests of the

lenders.[24]

### B.   The Arapahoe Lenders

In December 2004, Pali acted as placement agent for Arapahoe ATM

Fund ("Arapahoe"), the sixth LLC created by Renegade.[25]  "Arapahoe's only

business was to issue certain promissory Notes, acquire and maintain specific

ATMs, and particularly the Gene Rice and High's [p]ortfolios with the proceeds of

those Notes and repay the Notes as due."[26]  Pali recruited lenders and Arapahoe

was fully funded by December 31, 2004.[27]  The option to purchase the High's

---

[22]   *See id.* ¶ 33.

[23]   *See id.* ¶¶ 33-35.

[24]   *See id.* ¶ 36.

[25]   *See id.* ¶ 37.

[26]   *Id.*

[27]   *See id.* ¶ 38.  Other than Pali, the defendants named in this action were lenders to Arapahoe.

portfolio of ATMs would expire on January 28, 2005.[28]

Smith alleges that "Pali failed to ensure that the funds from the Arapahoe [l]enders were used to acquire any of the specific ATMs."[29]  Instead of using the loans provided by the Arapahoe lenders to purchase the Gene Rice and High's portfolios of ATMs, Renegade used the money to pay Pali's fees and Renegade's operating costs, and made deposits to Verbic's personal account.[30]  On or about January 18, 2005, Pali learned that the funds provided by the Arapahoe lenders had not been used for their intended purpose.[31]  However, Pali again failed to report this to the lenders.[32]

### C.    The Smith Lenders

On or about January 26, 2005, two days before the option to purchase the High's portfolio of ATMs would expire, Smith agreed to provide a $200,000 loan ("Bridge Loan") to Arapahoe for the purpose of Arapahoe acquiring the

---

[28]    *See id.* ¶ 42.

[29]    *Id.* ¶ 38.

[30]    *See id.* ¶ 39.

[31]    *See id.* ¶ 41.

[32]    *See id.*

High's portfolio.[33]  Upon receipt of payment, the owner of the High's portfolio of ATMs transferred the portfolio to Arapahoe.[34]  Smith alleges that the loan was expressly conditioned on a "promise by Pali and Soroca that they would repay the loan within thirty days."[35]

Between January 28, 2005 and February 22, 2005, Soroca and Pali assured Smith that the Bridge Loan would be repaid.[36]  On or about February 17, 2005, Pali informed Smith that it was providing an additional $600,000 to Renegade to keep Renegade solvent.[37]  Reifler agreed to use part of that additional funding to repay $100,000 of the Bridge Loan to Smith.[38]

Shortly thereafter, Reifler informed Smith that Pali was not going to advance the additional $600,000 and was not going to repay any part of the $200,000 Bridge Loan.[39]  Instead, proceeds from the High's portfolio of ATMs

---

[33]    *See id.* ¶ 43.

[34]    *See id.* ¶ 45.

[35]    *Id.* ¶ 43.

[36]    *See id.* ¶ 46.

[37]    *See id.* ¶ 47.

[38]    *See id.*

[39]    *See id.* ¶¶ 47, 49.

would be used to repay the Arapahoe lenders.[40]  On or about April 19, 2005, Pali filed a Uniform Commercial Code Financing Statement for all of the High's portfolio of ATMs and listed only the Arapahoe lenders as secured parties to the transaction.[41]

Smith commenced this action on May 3, 2006, and alleges various state law claims against Pali and the Arapahoe lenders.  *First*, Smith claims that since "Pali and Soroca agreed to the repayment and were direct and primary obligors for the $200,000,"[42] an enforceable oral contract was created.[43]  *Second*, Smith also alleges that Pali, and the Arapahoe lenders as principals of Pali, have unlawfully converted and exercised illegal dominion and control over the ATMs that were purchased with the Bridge Loan and the funds generated by those ATMs.[44]  *Third*, Smith alleges that appropriation of the ATMs and ATM proceeds resulting from use of the Bridge Loan was fraudulent and that defendants

---

[40]     *See id.*

[41]     *See id.* ¶ 48.

[42]     *Id.* ¶ 43.

[43]     *See id.* ¶ 51.

[44]     *See id.* ¶ 61.

intentionally caused the non-payment of the debt owed to Smith.[45] *Fourth*, Smith

seeks an order of judicial foreclosure of defendants' interests in the collateral,

funds, and other assets obtained with the Bridge Loan.[46] Smith requests a

constructive trust over the ATMs and ATM proceeds and seeks imposition of an

equitable lien on all such property.[47] Smith also seeks an order requiring delivery

of possession, title, and interest of the ATMs and ATM proceeds purchased with

the Bridge Loan from the defendants to Smith.[48]

## III.   LEGAL STANDARD

### A.   Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

motion to dismiss should be granted only if "'it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'"[49] The task of the court in ruling on a Rule 12(b)(6) motion is "merely

to assess the legal feasibility of the complaint, not to assay the weight of the

---

[45]    *See id.* ¶¶ 67-68.

[46]    *See id.* ¶ 73.

[47]    *See id.* ¶ 71.

[48]    *See id.* ¶ 74.

[49]    *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

evidence which might be offered in support thereof."[50]  The Second Circuit has

held that all complaints "must be read liberally; dismissal on the pleadings never is

warranted unless the plaintiff's allegations are doomed to fail under any available

legal theory."[51]  When deciding a motion to dismiss, courts must accept all factual

allegations in the complaint as true and draw all reasonable inferences in

plaintiff's favor.[52]  "'While the pleading standard is a liberal one, bald assertions

and conclusions of law will not suffice.'"[53]

### B.    Federal Rule of Civil Procedure 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires that the

plaintiff provide "a short and plain statement of the claim showing that the pleader

is entitled to relief."[54]  A complaint must merely "give the defendant[s] fair notice

---

[50]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation and citation omitted).

[51]    *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) (emphasis omitted).

[52]    *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 30 (2d Cir. 2004), *cert. denied*, 543 U.S. 1050 (2005) (quotation and citation omitted).

[53]    *Law Offices of Curtis V. Trinko, L.L.P., v. Bell Atl. Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)).

[54]    Fed. R. Civ. P. 8(a)(2).

-11-

of what the plaintiff's claim is and the grounds upon which it rests."[55]  Fair notice

is "'that which will enable the adverse party to answer and prepare for trial, allow

the application of res judicata, and identify the nature of the case so that it may be

assigned the proper form of trial.'"[56]  Accordingly, a complaint "'need not set out

in detail the facts upon which the claim is based.'"[57]  Thus, a complaint may not

"'be dismissed on the ground that it is conclusory or fails to allege facts.'"[58]

However, the Second Circuit has held that a plaintiff must allege those facts

necessary to a finding of liability.[59]  "In other words, a plaintiff's allegations,

---

[55]     *Conley v. Gibson,* 355 U.S. 41, 47 (1957).

[56]     *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  This notice pleading standard relies on the "'liberal opportunity for discovery and the other pretrial procedures'" to more precisely disclose "'the basis of both claim and defense and to define more narrowly the disputed facts and issues.'" *Century 21, Inc. v. Diamond State Ins. Co.,* 442 F.3d 79, 83 (2d Cir. 2006) (quoting *Conley*, 355 U.S. at 47-48).

[57]     *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006) (citing *Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 107 (2d Cir. 2005) (quoting *Conley*, 355 U.S. at 47)).

[58]     *In re Initial Pub. Offering Sec. Litig.,* 241 F. Supp. 2d 281, 323 (S.D.N.Y. 2003) (quoting *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002)).

[59]     *See Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 343 (2d Cir. 2006).

-12-

accepted as true, must be sufficient to establish liability."[60]

## IV.   APPLICABLE LAW

"Federal courts sitting in diversity must apply the substantive law of the forum state on outcome determinative issues."[61]   Because this court's jurisdiction is premised on diversity of citizenship, New York law applies to all the substantive claims.

### A.   Breach of Contract

"To make out a viable claim for breach of contract, a 'complaint need only allege (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.'"[62]   Under New York law, a contract need not be in writing in order to be enforceable.   "Oral agreements are binding unless the parties have explicitly indicated their intention to be bound only by an executed written agreement."[63] Under section 5-701 of the New York General Obligation Law, however, every

---

[60]     *Id.*

[61]     *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 249 (2d Cir. 2004) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78-80 (1938)).

[62]     *Eternity Global Master Fund Ltd.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

[63]     *Bellis v. Tokio Marine and Fire Ins. Co.*, No. 93 Civ. 6549, 2002 WL 193149, at *9 (S.D.N.Y. Feb. 7, 2002).

agreement must be in writing if it is "a special promise to answer for the debt, default or miscarriage of another person[.]"[64]

### B.     Conversion

To state a claim for conversion under New York law, a plaintiff must allege facts sufficient to establish that the defendant acted without authorization, defendant exercised dominion or right of ownership over property belonging to the other, plaintiff has made a demand for the property, and the demand is refused.[65] "Demand is not always required in order to make out a claim for conversion.  It is required only when the original possession is lawful."[66]  Plaintiff must also "demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing."[67]

"Money can be the subject of a conversion action 'where there is a specific identifiable fund, and an obligation to return or otherwise treat in a

---

[64]     N.Y. Gen. Oblig. Law § 5-701(a)(2) (McKinney 2006).

[65]     *See Seanto Exports v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001).

[66]     *Reserve Solutions, Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 288 (S.D.N.Y. 2006).

[67]     *Gateway Overseas, Inc. v. Nishat Ltd.*, No. 05 Civ. 4260, 2006 WL 2015188, at *7 (S.D.N.Y. July 13, 2006) (quotation and citation omitted).

particular manner the specific fund in question.'"[68]  However, an action for conversion of money may not lie where damages are merely being sought for breach of contract.[69]  "[P]laintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights."[70]

## C.    Fraudulent Conveyance

A plaintiff bringing a claim under section 273 of the New York Debtor and Creditor Law must allege facts sufficient to support the elements of such a claim.  Plaintiff must allege that there was a conveyance "without fair consideration" and that "the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer in question."[71]  "Plaintiff must also allege its status as a creditor of that person or entity."[72]  Payment of an antecedent

---

[68]     *Id.* (quoting *Manufacturers Hanover Trust Co. v. Chemical Bank*, 559 N.Y.S.2d 704, 711-12 (1st Dep't 1990)).

[69]     *See id.*

[70]     *Global View Ltd. Venture Capital v. Great Central Basin Exploration, LLC*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003) (citation omitted).

[71]     *Mills v. Everest Reinsurance Co.*, 410 F. Supp. 2d 243, 254 (S.D.N.Y. 2006).  *See also* N.Y. Debt. & Cred. Law § 273 (McKinney 2006).

[72]     *Fromer v. Yogel*, 50 F. Supp. 2d 227, 247 (S.D.N.Y. 1999).

-15-

debt can constitute fair consideration.[73]

Because intent to defraud is not an element of constructive fraudulent

conveyance, such claims, as opposed to claims of actual fraud, are not subject to

the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure.[74]  "Rather, pleading fraudulent conveyance [under § 273] requires only

a short and plain statement of the claim showing that the pleader is entitled to

relief."[75]

> ### D.    Judicial Foreclosure

> #### 1.    Constructive Trust

In order for a court to impose a constructive trust, a plaintiff must

assert facts sufficient to establish such a cause of action.  Relevant factors a court

may consider before imposing a constructive trust include whether there was: (1) a

confidential or fiduciary relationship; (2) a promise, which may be express or

---

[73]    *See American Inv. Bank v. Marine Midland Bank*, 595 N.Y.S.2d 537,
538-39 (2d Dep't 1993).

[74]    *See Mills*, 410 F. Supp. 2d at 254.  Rule 9(b) states that "[i]n all
averments of fraud or mistake, the circumstances constituting fraud or mistake
shall be stated with particularity.  Malice, intent, knowledge, and other condition
of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

[75]    *Mills*, 410 F. Supp. 2d at 254 (quotation and citation omitted).

implied; (3) a transfer in reliance on that promise; and (4) unjust enrichment.[76]

These factors are mere guidelines and a constructive trust may be imposed whenever justice so demands.[77] "The purpose of a constructive trust is said to be the prevention of unjust enrichment, and even innocent parties may be unjustly enriched.  No breach of promise is necessary for the imposition of a constructive trust."[78]  To impose a constructive trust, all that is required is that a party hold property "under such circumstances that in equity and good conscience he ought not to retain it."[79]  However, "[a] constructive trust will not be imposed in favor of a party who had no interest in the property prior to obtaining a promise that such interest will be given to him."[80]

### 2.    Equitable Lien

Under New York law, a claim for an equitable lien depends on whether there is some agreement, express or implied, stating that there shall be a

---

[76]    *See Golden Budha Corp. v. Canadian Land Co. of America*, 931 F.2d 196, 202 (2d Cir. 1991).

[77]    *See id.*

[78]    *Id.* (citation omitted).

[79]    *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978) (citation omitted).

[80]    *Security Pac. Mortgage and Real Estate Servs. v. Republic of the Philippines*, 962 F.2d 204, 210 (2d Cir. 1992) (quotations and citation omitted).

lien on specific property.[81]  "The agreement must deal with some particular

property either by identifying it or by so describing it that it can be identified and

must indicate with sufficient clearness an intent that the property so described or

rendered capable of identification is to be held, given or transferred as security for

the obligation."[82]  "Courts should not permit a party to assert an equitable lien in a

case which is essentially one for money owed, as the party has an adequate remedy

at law to collect the debt."[83]

## IV.        DISCUSSION

### A.      Plaintiffs State a Claim for Breach of Contract

Smith claims that Pali breached an oral contract to repay the Bridge

Loan Smith provided for the purchase of ATMs.[84]  Significantly, Pali does not

dispute that there was an oral promise to repay the Bridge Loan.  Instead, Pali

argues that Arapahoe is the primary obligor and that the statute of frauds applies

---

[81]      *See Capital Distrib. Serv., Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F.
Supp. 2d 195, 209 (E.D.N.Y. 2006) (citing *Teichman v. Community Hosp. of W.
Suffolk*, 87 N.Y.2d 514, 520 (1996)).

[82]      *Id.*

[83]      *Miller v. Marchuska*, 819 N.Y.S.2d 591, 593 (3d Dep't 2006).

[84]      *See* Compl. ¶¶ 43, 46.

-18-

since the promise was one to answer for the debt of another.[85]  Pali argues that "[t]here is no allegation that plaintiffs loaned money to Pali or the investor defendants."[86]  Pali also states that "the Bridge Loan can only be construed as a promise to satisfy Arapahoe's debt . . . and any promise by Pali to repay was secondary."[87]  As such, Pali claims the oral contract is unenforceable.

Pali's arguments must fail.  The Complaint adequately pleads facts sufficient to state a claim against Pali for breach of an oral contract.  Specifically, Smith alleges that (1) on numerous occasions, Pali agreed to reimburse Smith for the Bridge Loan;[88] (2) pursuant to that promise, Smith provided $200,000 for the purchase of ATMs;[89] (3) Pali breached the agreement by failing to repay Smith;[90] and (4) Smith was thereby damaged.[91]  Smith also alleges that Pali agreed to repay

---

[85]     *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 3.  *See also* Defendants' Reply Memorandum in Support of Motion to Dismiss ("Reply Mem.") at 2-3.

[86]     Reply Mem. at 3.

[87]     Def. Mem. at 4.

[88]     *See* Compl. ¶¶ 43, 46.

[89]     *See id.* ¶ 43.

[90]     *See id.* ¶ 49.

[91]     *See id.* ¶ 55.

the Bridge Loan independent of any obligation on the part of Arapahoe.[92]  This is

sufficient to exempt this claim from the requirements of New York's statute of

frauds.  Pali's motion to dismiss the breach of contract claim is denied.

### B.    Plaintiffs Fail to State a Claim for Conversion

Smith claims that defendants have "diverted fees from the High's

[p]ortfolio to their own use and to repay the Arapahoe [l]enders, [ ] failed to repay

the Bridge Loan and otherwise unlawfully converted and exercised illegal

dominion and control over the ATMs that were purchase[d] with the Bridge Loan

and those funds which have been generated by those ATMs."[93]  Smith also alleges

that the defendants have "unlawfully deprive[d] the Plaintiffs of the funds

generated by the ATMs and the collateral security represented by those ATMs,

exercised unlawful dominion and control over funds that belong to Plaintiffs by

virtue of the Bridge Loan and have otherwise converted assets purchased with the

Smith Funders' Bridge Loan that rightfully belong to Plaintiffs."[94]

Defendants argue that Smith has failed to allege a superior possessory

---

[92]    *See id.* ¶ 43 ("Pali and Soroca agreed to the repayment and were
direct and primary obligors for the $200,000."). *See also* Plaintiffs' Memorandum
of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp. Mem.") at 3-4.

[93]    Compl. ¶ 61.

[94]    *Id.* ¶ 62.

right to the ATMs or ATM proceeds, that Smith is claiming nothing more than an unsecured loan, and that Smith has simply restated its breach of contract claim.[95] Defendants are right on their first point.  Smith has not alleged that it acquired a superior possessory right to this property by virtue of providing the loan. Similarly, Smith does not allege that defendants promised a security interest in the ATMs or ATM proceeds as consideration for obtaining the Bridge Loan.  Finally, Smith does not claim that it ever owned the property that is the subject of its conversion claim.[96]  In fact, Smith concedes that it "did not have an interest in the ATMs before the transfer [of the loan funds]."[97]  Smith has failed to allege any interest in the ATMs or ATM revenues to support a claim for conversion.

Smith relies on *Dover Ltd. v. A.B. Watley, Inc.*,[98] but that case is easily distinguished.  *Dover* involved a conversion claim against a broker-dealer for improperly using the investor's funds to satisfy someone else's debt.[99]  The defendant in *Dover*, unlike the defendants here, promised to use the plaintiff's

---

[95]    *See* Def. Mem. at 6-7.  *See also* Reply Mem. at 4.

[96]    *See* Reply Mem. at 4.

[97]    Pl. Opp. Mem. at 7.

[98]    423 F. Supp. 2d 303 (S.D.N.Y. 2006).

[99]    *See id.* at 328.

investment in a specific way and then failed to do so.[100]  In this case, the

allegations of the Complaint reveal that Smith was well aware that its loan would

be used for purchasing ATMs and that the ATMs would belong to Arapahoe.

Smith admits that its Bridge Loan was used exactly for the purpose for which it

was provided: acquisition of the High's ATMs.[101]

Because Smith has not alleged any interest in the property itself,

Smith is seeking nothing more than the recovery of its Bridge Loan.  As this Court

has previously held, "an action for conversion of money cannot be maintained

where damages are merely being sought for breach of contract."[102]  Defendants'

motion to dismiss the conversion claim is granted.

### C.    Plaintiffs Fail to State a Claim for Fraudulent Conveyance[103]

Smith's third cause of action alleges that the defendants fraudulently

conveyed the ATMs and ATM revenues obtained through the Bridge Loan by

failing to repay the loan and instead using those assets to satisfy other

---

[100]    *See id.*

[101]    *See* Compl. ¶ 45.

[102]    *Gateway Overseas, Inc.*, 2006 WL 2015188, at *7.

[103]    While the Complaint does not specify the statutory basis for the
fraudulent conveyance claim, the Plaintiffs' Memorandum of Law explains that
they are relying on section 273 of the New York Debtor and Creditor Law.  *See* Pl.
Opp. Mem. at 6.

obligations.[104]  The Complaint alleges that "Pali, on its own behalf and as agent for

the Arapahoe [l]enders[,] appropriated the ATMs purchased with the Bridge Loan

without having repaid that loan, and obtained assets and funds attributable to the

ATMs."[105]  Further, Smith claims that "Defendants combined and conspired to

engage in appropriation of the ATMs and other assets and the funds and fees, all

of which was the property of the Plaintiffs, without paying reasonably equivalent

value to Plaintiff[s]."[106]

Defendants argue that Smith has failed to state a claim for fraudulent

conveyance because the ATMs and ATM revenues belong to Arapahoe, not to Pali

and the Arapahoe lenders.[107]  Defendants properly assert that Smith has not alleged

facts sufficient to sustain liability under section 273 of the New York Debtor and

Creditor Law.  Specifically, Smith has not alleged that the debtors, Pali or the

Arapahoe lenders as transferors of the ATMs, are insolvent or will be rendered

insolvent due to the fraudulent conveyance.  Smith admits that "[p]laintiffs do not

allege that Pali is insolvent or about to become insolvent . . . Pali and the Investor

---

[104]     *See* Compl. ¶¶ 67-69.

[105]     *Id.* ¶ 69.

[106]     *Id.*

[107]     *See* Def. Mem. at 8-9.

-23-

Defendants have actually taken over the assets that were in the name of Arapahoe, thus rendering [Arapahoe] insolvent."[108]  The only party Smith alleges is insolvent is Arapahoe, who is not a defendant in this case.[109]  Defendants' motion to dismiss the fraudulent conveyance claim is granted.

### D.    Plaintiffs Fail to State a Claim for Judicial Foreclosure

#### 1.    Plaintiffs Fail to State a Claim for a Constructive Trust

Smith seeks imposition of a constructive trust over the ATMs and ATM proceeds obtained through the Bridge Loan.[110]  Smith argues that even though they did "not have an interest in the ATMs before the transfer, this does not preclude the imposition of a constructive trust or a finding that the Defendants were unjustly enriched by their actions."[111]  Defendants argue that the claim must be dismissed because Smith has failed to allege a security interest in the ATMs or ATM proceeds and has failed to allege a confidential or fiduciary relationship with the defendants.[112]

---

[108]    Pl. Opp. Mem. at 6-7.

[109]    *See id.*

[110]    *See* Compl. ¶ 71.

[111]    Pl. Opp. Mem. at 7.

[112]    *See* Def. Mem. at 12.

Defendants correctly point out that Smith has failed to plead facts sufficient to support this type of claim.[113]  While this equitable relief "is not rigidly limited" and "is a flexible device,"[114] the Complaint contains no allegations suggesting that a special relationship existed between the parties that would justify imposition of a constructive trust.  Smith relies on *Friddell v. Alberalla*,[115] but this case lends no support to Smith's argument.  In *Friddell*, a constructive trust was imposed in favor of a daughter who had incurred expenses over several years to maintain her mother's property based on her mother's promise to deed the property to the daughter.[116]  Here, Smith alleges no facts to suggest that defendants had promised Smith an interest in the property at issue, or that Smith had otherwise acquired such an interest.

### 2.    Plaintiffs Fail to State a Claim for an Equitable Lien

Smith requests an equitable lien on all ATMs and ATM proceeds obtained through the Bridge Loan.[117]  Defendants argue that Smith fails to state a

---

[113]    *See id.* at 13.  *See also* Reply Mem. at 7.

[114]    *Golden Budha Corp.*, 931 F.2d at 202.

[115]    176 A.D.2d 1213 (4th Dep't 1991).

[116]    *See id.* at 1214.

[117]    *See* Compl. ¶ 71.

claim for an equitable lien because Smith has "not alleged any agreement or that the parties clearly intended that the High's [p]ortfolio would be given as security for the Bridge Loan."[118]  Defendants are correct on their second point.  This claim fails because the Complaint is devoid of any allegation that the purported contract identified certain property or made the identification of specific property possible, and that the parties intended that the property serve as security for an obligation. Defendants' motion to dismiss the claim for an equitable lien is granted.  For all these reasons, the claim for an order of judicial foreclosure is also granted.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the conversion, fraudulent conveyance, and judicial foreclosure claims is granted. Pali's motion to dismiss the breach of contract claim is denied.  The Clerk of the Court is directed to close this motion [No. 5 on the docket].  A conference is scheduled for November 17, 2006, at 4:00 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

---

[118]     Def. Mem. at 12.

Dated:    New York, New York
           November 7, 2006

## -Appearances-

### Counsel for Plaintiffs:

James D. Fornari, Esq.
Robert S. Wolf, Esq.
GERSTEN SAVAGE L.L.P.
600 Lexington Avenue
New York, New York 10022
(212) 752-9700

### Counsel for Defendants:

John D. Lovi, Esq.
STEPTOE & JOHNSON L.L.P.
750 Seventh Avenue, Suite 1900
New York, New York 10020
(212) 506-3900

Francis J. Burke, Jr., Esq.
STEPTOE & JOHNSON L.L.P.
Collier Center
201 East Washington, Suite 1600
Phoenix, Arizona 85004
(602) 257-5200